WESTINGHOUSE COMPANY V. JOHN L. MEIXEL ET AL.

FILED NOVEMBER 2, 1904.  No. 13,614.

1. **Sale: WARRANTY: DEFENSE.** Where the petition alleges that the plaintiff agreed with the defendant to purchase certain threshing machinery, and that he received the same, subject to an agreement whereby he was to take such machinery upon trial, that it was warranted to be well fitted for the purposes for which it was sold, and that it shall operate to his satisfaction, and that

if not satisfactory he might return the machinery and receive back the notes and personal property given in consideration therefor; and the answer "admits that the property was taken under warranty, and subject to trial, but denies that the terms of said warranty and the conditions of such trial are as alleged in said petition," *Held*, That the defendant is not entitled under such pleadings to prove and rely as a defense upon certain conditions in a written contract between the parties, which is not pleaded. in the answer.

2. **Defense: NEW MATTER.** Such a defense is new matter, and must be pleaded before it can be proved.

3. **Waiver.** Under the circumstances set forth in the opinion, *held*, that the plaintiff in error waived the provisions of the written contract with reference to the retention of the machinery after a four-days' trial constituting an acceptance of the same.

ERROR to the district court for Hamilton county: BENJAMIN F. GOOD, JUDGE. *Affirmed.*

*Mockett & Polk* and *John A. Whitmore,* for plaintiff in error.

*Hainer & Smith, contra.*

LETTON, C.

This cause was brought in the district court for Hamilton county by John L. Meixel and Ina H. Meixel, as plaintiffs, against the Westinghouse Company, defendant. The petition alleges, in substance, that the Westinghouse Company is a New York corporation; that, .on February 21, 1902, the plaintiffs at Aurora, Nebraska, entered into a contract with the defendant, whereby they agreed to purchase a Westinghouse thresher engine, separator, stacker and loader, complete; that, by the terms of the contract, the plaintiffs were to execute their notes to the amount of $1,850, pay the freight charges on the new machinery and deliver to the defendant a second-hand engine, loader and separator which were then owned by the plaintiffs, and which were agreed by the parties to be of the value of $700, and, in case plaintiffs finally purchased the prop-

erty, this was to be taken as a payment of that amount upon the property purchased. To induce the plaintiffs to purchase the property, the defendant represented and warranted that it was well and properly constructed, and that it was well fitted for the purpose of threshing, separating and cleaning grain, and that it should work to the satisfaction of the plaintiffs; and it was further agreed that the plaintiffs should receive the property for a reasonable time for the purpose of making a trial of the same, and if it failed to give satisfaction, then notice to be given defendant and an opportunity to make it operate satisfactorily, but, if it failed to perform the work to plaintiffs' satisfaction, they were to return the machinery to the defendant's agent, and the money, property and notes which had been delivered to the defendant should be returned to the plaintiffs, and that the title to the machinery should remain in the defendant until the full consummation of the agreement for the sale and purchase of the same. Plaintiffs allege that they executed the notes, and delivered the machinery mentioned, and took the thresher outfit for the purpose of giving it a trial under the agreement. The petition recites a large number of defects in the operation of the machinery, and that the machine wholly failed to work properly or in a satisfactory manner to the plaintiffs, or to properly perform the work for which it had been delivered; that, upon ascertaining the fact, the plaintiffs notified the defendant, and also notified its agent at Aurora; that the defendant, through its agents, attempted to put said machinery in proper working order so as to comply with the contract; that the defendant, after having attempted at different times to remedy the defects and to place the machinery in proper condition, abandoned said property, and notified plaintiffs that they would make no further attempts to remedy the defects; that the machinery taken together at the time of the abandonment was wholly worthless for the purposes of a threshing outfit, and that, within 48 hours after defendant refused to attempt to place said machinery in proper work-

43

ing order and abandoned the same, the plaintiffs returned said machinery to the agent of the defendant, demanded the return of the money and notes, and also the return of the second-hand engine, loader and separator which they had delivered to the defendant, but that the defendant refused to return the same.

For a second count the plaintiffs, after making the same allegations with reference to the contract and the failure of the machinery to work properly, alleged that a number of the notes given are not yet due; that the defendant has disposed of some of said notes to innocent purchasers; that plaintiffs are without adequate remedy at law; and they ask that the court render an alternative judgment requiring defendant to deposit the notes with the clerk of the court for cancelation within a short day to be named by the court, or to give plaintiffs a judgment for their face value. They also ask judgment for the value of the machinery turned over to the defendant. Since the proper disposition of the case rests mainly upon the question of what issues were raised by the pleadings, we copy the answer at length.

"Comes now the above named defendant and, for answer to the first count of plaintiffs' petition, admits that the defendant is a corporation organized under the laws of the state of New York; that on the 21st day of February, 1902, at Aurora, Nebraska, plaintiffs and defendant entered into a contract for the purchase and sale of the machinery described in said petition; that plaintiffs received said machinery, paid freight thereon in the sum of $143.75, turned over to defendant the property of plaintiffs in said petition described, as part payment of the purchase price of said machinery, and made and delivered to defendant their promissory notes for the balance of said purchase price, to wit, $1,850, as mentioned and described in the petition. The defendant further admits that said machinery was accepted by the plaintiffs under warranty and subject to trial, but denies that the terms of said warranty and the conditions of such trial are as alleged in said

petition. For a second and further defense to said first count, defendant denies every allegation thereof not herein specifically admitted. For answer to that part of the second count of said petition not contained in the first count thereof, defendant admits that the notes given by plaintiffs to defendant and described in plaintiffs' petition are negotiable promissory notes, and that a part of the same are not yet due. For a second and further defense to the additional allegations of said second count, defendant denies each and all said allegations not herein specifically admitted." We find no reply in the transcript.

At the request of the plaintiffs, the first cause of action set up in the petition was set off to be tried by a jury, and the second cause of action was retained for trial by the court. The jury found for the plaintiffs as to the first cause of action, and so likewise did the court as to the second count. Judgment was rendered, from which the defendant prosecutes error to this court.

The plaintiffs in error contend, first, that there is a variance between the pleading and the proof, since the proof showed a written warranty; that the purchaser is bound by the terms of his contract and all the conditions therein unless he pleads and proves a waiver of such conditions, and that it is necessary to plead a waiver in order to offer proof thereof, and that the conditions in the written warranty are conditions precedent to the right of rescission, and must be complied with unless a waiver is pleaded and proved. It will be observed that the answer admits "that said machinery was accepted by the plaintiffs under warranty and subject to trial, but denies that the terms of said warranty and the conditions of such trial are as alleged in the petition." This action, under the allegations of the petition, is not an action brought upon the warranty, but an action for the recovery of certain personal property and for the cancelation of notes delivered by Meixel to the Westinghouse Company, to be held by it pending a trial of the machinery to ascertain if it operated satisfactorily to Meixel. If it so operated he

agreed to purchase it, but if it did not so operate he was under no such obligation. The petition alleges that the machinery failed upon trial and that Meixel, in accordance with the agreement, returned the same and demanded a return of his property and notes. The answer admits that the machinery was accepted under warranty and subject to trial, and denies, in general terms, the other allegations of the petition, but fails to plead the existence of any other agreement than that set out in the plaintiffs' petition. Under this state of the pleadings, the only question left to be determined was whether the machinery was defective, and whether Meixel had carried out the provisions of the conditional agreement upon his part.

Instruction numbered 5 given by the court, which is as follows, is complained of: "The principal question for the jury to determine is whether or not the threshing outfit in fact did good work and operated to the satisfaction of the plaintiffs. This question should be determined wholly from the evidence introduced before you. If the jury believe, from the evidence, that such threshing outfit, in fact, did not do good work, and that it was not adapted to the use for which it was purchased, and that it failed to operate satisfactorily to the plaintiffs, and you further find that the defendant, when notified of such failure, failed to so adjust said threshing outfit as to make it work satisfactorily, and thereafter refused to further adjust said machinery, and that plaintiffs within 48 hours thereafter returned said threshing outfit to defendant's agent at Aurora, and demanded the return of their property and notes, then the plaintiffs would be entitled to your verdict." This instruction however correctly states the issues framed by the pleadings and was proper to be given.

A large number of witnesses were examined as to the facts with reference to the failure of the machine to perform good and satisfactory work. It would seem that the friction clutch, which is a device brought into use when it is desired to use that part of the machinery of the engine which gives it its power of locomotion, was defect-

ive, and that Meixel had considerable trouble in moving his engine from place to place on account of this defect. The season had been wet and rainy, and a great deal of the grain was damp and in bad condition to thresh. It is shown that the engine consumed large quantities of coal for the work that it performed, and that the separator failed to separate the wheat from the straw to such an extent that a great deal of the wheat was carried over with the straw, and spilled upon the ground at the end of the blow stacker; that Meixel had serious complaints from his patrons with reference to the operation of the machine, and the manner in which it wasted grain, and that he complained to the agent of the company of these defects. That, on the 12th of August, H. T. Jensen, the agent of the defendant, from whom he bought the machine, went to look at the engine, and wrote to the defendant's agency at Council Bluffs with reference to the friction clutch and to the large coal consumption; notifying them that it was of the utmost importance that they send one of their experts at once. In response to this letter, a man named Robinson was sent on the 14th instant to look at the engine. He did practically nothing toward remedying the defect, and, on the 28th of August, Meixel having again complained, another letter was written by Jensen to the Council Bluffs agency with reference to the machine. In reply to this letter, the Council Bluffs agency wrote Jensen saying they had referred his letter and Meixel's complaint to the factory. On the 30th day of August, Jensen also wrote to the Schenectady office of the defendant, describing the complaint made regarding the engine and the condition of the machinery. On September 19, 1902, Meixel's attorneys, Messrs. Hainer & Smith, at his request, wrote to the Westinghouse Company at Schenectady, New York, explaining the trouble that Meixel had had, and requesting that the outfit be put in proper condition; suggesting that they send a man with a new clutch. To this letter of September 19 the company replied that the engine was not to blame; that the trouble was due to the improper handling

of the engine, and to the use of an improper lubricant, but that they were friendly to Meixel and were preparing another friction clutch, which they would send him in a few days. On October 2, 1902, Hainer & Smith again wrote to Schenectady, reciting the defects in the engine and separator, combating the assertion that the trouble was caused by a defective lubricant, requesting that the company send an expert to give the machinery a further test, and offering all possible friendly assistance to that end. On October 17, 1902, H. J. Edwards, the Council Bluffs agent of the defendant, went to see Meixel at Aurora with reference to the collection of Meixel's note that was due October 1. At that time Meixel said that he did not intend to pay the note, that the engine burned too much coal, that the separator had wasted the grain, and that he did not intend to pay the note unless the machine would run right. On October 27, one Corey, an employee of the defendant, was sent by the company to the place where Meixel was threshing. He made some changes in the separator, and the next day made some other adjustments, and tested the coal consumption of the engine. It seems that, after he had done all he could, Meixel was still dissatisfied with the work the machine was doing, and, since Corey had failed to make it do satisfactory work, he told him that he would not keep the machine, and asked him where to take it. Corey told him he had bought the machine, and gave him no directions as to what disposition to make of it. Within 48 hours after this, Meixel delivered the machine to the defendant's agent at Aurora. Meixel's complaints and the company's promises and efforts to remedy the defect continued up until the time of the return of the machinery. Under this state of facts, the company waived the provision of the written contract that continued use after four days' trial should constitute an acceptance.

There is a conflict in the evidence as to the defects in the machinery, but there is ample evidence to support the verdict of the jury. Numerous errors are assigned in regard to the introduction of evidence and with reference

to instructions of the court, but these assignments are based upon the contention that compliance on the part of Meixel with the terms of the written warranty were conditions precedent to his right to rescind, and must be pleaded before he would be entitled to maintain this action. Under the pleadings, however, as they stand, the action is not upon the warranty. If the plaintiff in error desired to take advantage of the provisions of the written contract, it should have pleaded the same in its answer.

It is complained that the decree of the court requiring the surrender of the note to the clerk of the district court for cancelation within 10 days has the effect of denying to the plaintiff in error the right of review. This is an erroneous conception of the force and effect of the decree. When its operation was suspended by the execution of a supersedeas bond, the time to deposit the notes for cancelation was extended until 10 days after a final affirmance of the judgment.

The case was carefully tried. The rulings of the court upon the evidence, and its instructions to the jury, were in accordance with the issues raised by the pleadings.

We recommend that the judgment of the district court be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.